UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
|    MICHAEL BILLINGS and | : | |
|    KATHLEEN BILLINGS, | : | Bky. No. 14-12874 ELF |
| | : | |
|                 Debtors. | : | |
| | : | |
| | : | |
| MICHAEL BILLINGS and KATHLEEN | : | |
| BILLINGS on behalf of themselves and | : | |
| those similarly situated, | : | |
| | : | |
|                 Plaintiffs, | : | Adv. No.  15-470 ELF |
| | : | |
|                 v. | : | |
| | : | |
| PORTNOFF LAW ASSOCIATES, LTD., | : | |
| | : | |
|                 Defendant. | : | |

# **M E M O R A N D U M**

### I.  INTRODUCTION

Portnoff Law Associates, Ltd. ("Portnoff") is a law firm that represents various municipalities and municipal authorities in Pennsylvania.  In the course of that representation, Portnoff regularly files written motions in state court "continuing" or "postponing" sheriff's sales of real property that have been stayed by the property owner's bankruptcy filing under chapter 13 of the Bankruptcy Code.[1]  In some cases, Portnoff files multiple motions in the state court to

---

[1] The terms "continue" and "postpone" are used interchangeably to refer to the deferral of a sheriff's sale without the requirement that the creditor provide the property owner and the public with notice of the new sale date by mail, posting and publication.  For the sake of economy, I will use the term "postpone" in this Memorandum.

"postpone" the sheriff's sale.

Debtors Michael Billings and Kathleen Billings ("the Debtors") have filed a class action lawsuit against Portnoff asserting that Portnoff's practice of filing multiple motions to postpone sheriff's sales, without first obtaining relief from the automatic stay under 11 U.S.C. §362(d), violates the automatic stay, 11 U.S.C. §362(a).

Presently before the court is Portnoff's Motion to Dismiss the Complaint ("the Motion"), filed under Fed. R. Civ. P. 12(b)(6) (incorporated in this adversary proceeding by Fed. R. Bankr. P. 7012).

The Motion will be granted.

## II. PROCEDURAL HISTORY

The Debtors filed a voluntary chapter 13 petition on April 11, 2014.  On October 22, 2015, the Debtors instituted this adversary proceeding against Portnoff by filing a class action complaint ("the Complaint").  The Complaint consists of two (2) counts.

Count I is a claim for violation of the automatic stay, 11 U.S.C. §362(a).  The Debtors seek declaratory and injunctive relief, as well as monetary damages under 11 U.S.C. §§101, 362(a)(1), (k).  More specifically, the Debtors request that the bankruptcy court: (1) declare that the filing of state court continuation motions is a violation of the automatic stay, (2) enjoin Portnoff from filing any further such motions, and (3) sanction Portnoff for a knowing violation of the stay.

In Count II, the Debtors request that this action be certified as a class action under Fed. R. Civ. P. 23(b)(2).  They define the putative plaintiff class as chapter 13 debtors who:

(1) filed a chapter 13 case within the last three years in this judicial district, in which Portnoff entered its appearance, (including bankruptcy cases that have been dismissed); and

(2) are subject to governmental or municipal liens for which Portnoff filed at least one written motion in the Courts of Common Pleas, seeking to postpone a sheriff's sale during the pendency of the bankruptcy case, without first obtaining relief from the automatic stay pursuant to 11 U.S.C. §362(d) .

Portnoff moved to dismiss the Complaint on November 18, 2015.  (Doc. # 5).  The Debtors filed a response to the Motion on December 7, 2014.  (Doc. # 7).

## II.  APPLICABLE LEGAL STANDARD – RULE 12(b)(6)

Fed. R. Civ. P. 12(b)(6) allows a party to raise as a defense that the complaint "fails to state a claim upon which relief can be granted."  Last year, I described the legal standard under Rule 12(b)(6) as follows:

> A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the factual allegations of a complaint, see Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and determines "whether the plaintiff is entitled to offer evidence to support the claims," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 n.8. (2007).
>
> A defendant is entitled to dismissal of a complaint only if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 547.  A claim is facially plausible where the facts set forth in the complaint allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
>
> In evaluating the plausibility of the plaintiff's claim, the court conducts a context-specific evaluation of the complaint, drawing from its judicial experience and common sense.  See, e.g., Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009); In re Universal Marketing, Inc., 460 B.R. 828, 834 (Bankr. E.D. Pa. 2011) (citing authorities); In re Olick, 2011 WL 2565665, at *1–2 (Bankr. E.D. Pa. June 28, 2011).  In doing so, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, viewing them in the light most favorable to the plaintiff.  See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Taliaferro v. Darby

>Township Zoning Board, 458 F.3d 181, 188 (3d Cir.2006).  But, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555).
>
>The Third Circuit Court of Appeals has condensed these principles into a three (3) part test:
>
>> • First, the court must take note of the elements a plaintiff must plead to state a claim.
>>
>> • Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.
>>
>> • Third, where there are well-pled factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.
>
>Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quotations and citations omitted).
>
>Finally, in assessing a Rule 12(b)(6) motion, the court may "consider the allegations in the complaint, exhibits attached to the complaint and matters of public record ... [as well as,] 'undisputedly authentic documents' where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss."  Unite Nat'l Ret. Fund v. Rosa Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa. Sept. 14, 2007) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also In re Angulo, 2010 WL 1727999, at *12 n.1 (Bankr. E.D. Pa.  Apr. 23, 2010).

In re Bennett, 531 B.R. 68, 71-72 (Bankr. E.D. Pa. 2015).

### III.  STATEMENT OF FACTS

In deciding the Motion, I accept the following facts as true based on the allegations in the Complaint and the documents attached to the Complaint.

The Debtors own and reside at the real property located at 600 Jolene Drive, West Chester, Pennsylvania ("the Property").

On March 11, 2013, Portnoff, acting as counsel to West Bradford Township ("the Township"), filed a municipal lien action (2013-02220-LN) in the Pennsylvania Court of Common Pleas, Chester County ("the CP Court") against the Debtors for unpaid sewer, trash, and hydrant fees, totaling $4,452.78. (Compl. ¶ 12; Ex. B). The Township obtained a default judgment on July 10, 2013 in the amount of $5,259.61 ("the Judgment"). (Id. ¶ 13; Ex. B).[2]

The Township filed a praecipe for a writ of execution to allow the Township to schedule a sheriff's sale of the Debtors' Property to satisfy the Judgment. (Compl. ¶ 14). The CP Court granted the writ and the Property was listed for a sheriff's sale in April 2014. Prior to the sale date, the Debtor filed this chapter 13 bankruptcy case, whereupon Portnoff orally postponed the scheduled sheriff's sale to August 2014. (Id. ¶ 15).

On August 20, 2014, Portnoff filed a written motion with the CP Court to postpone the sheriff's sale until October 16, 2014. (Id. ¶ 18).[3] The CP Court granted the motion. Portnoff did not seek prior relief from the automatic stay in the Bankruptcy Court.

Again on October 15, 2014, January 14, 2015, April 14, 2015, September 16, 2015, Portnoff filed written motions with the CP Court to postpone the sheriff's sale. The CP Court granted the motions to postpone the sheriff's sale. Portnoff did not seek relief from the stay before filing these subsequent written motions in the CP Court. (Id. ¶¶ 19-20, 23-24).

The Debtors allege that Portnoff has a history of routinely filing the same type of motions

---

[2] Exhibit B to the Complaint is the CP Court docket. The state docket reflects that a default judgment in the amount of $5,249.61 was entered against the Debtors. The difference in the Judgment amount is not material to the outcome of this proceeding.

[3] The Complaint states that the sheriff's sale was postponed to August 21, 2014. (Complaint ¶ 18). This date is contrary to the information on the CP Court docket.

in state court to postpone scheduled sheriff's sales against chapter 13 bankruptcy debtors in this bankruptcy district without first seeking relief from stay.  (Id. ¶ 32).

## IV.  DISCUSSION

The issue before the court is a question of law.  Simply put, the issue is whether the Court of Appeals' decision in Taylor v. Slick, 178 F.3d 698 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000), controls.

### A.

The Taylor decision is based on the interplay between a provision of the Bankruptcy Code and the Pennsylvania Rules of Civil Procedure.

Section 362(a)(1) of the Code provides that a bankruptcy filing stays "the . . . **continuation . . . of a judicial, administrative, or other action or proceeding against the debtor** that was . . . commenced before the commencement of the case under this title . . . to recover a claim against the debtor that arose before the commencement of the case under this title." (emphasis added).  It is well known that the automatic stay is designed to stop pending debt collection litigation and is considered one of the fundamental protections afforded by the Bankruptcy Code.  See, e.g., H & H Beverage Distributors v. Dep't of Revenue of Com. of Pa., 850 F.2d 165, 166 (3d Cir. 1988).

Pa. R. Civ. P. 3129.2 provides that prior to the execution upon a judgment by a sheriff's sale of real property, notice must be given by posting and publication.  Rule 3129.3(a) provides, as a general rule, that if a sheriff's sale is "stayed, continued, postponed or adjourned," new

notice of the sale must be given. Of course, new notice (especially the publication requirement) compels the creditor to incur additional expenses (which, by agreement or by statute, frequently is passed on to the judgment debtor/homeowner).

There are, however, exceptions to the general rule that stayed, continued, postponed or adjourned sheriff's sales must be re-noticed.

The first exception is found in subsection Rule 3129.3(b), which allows a sale to be postponed without the service and publication of a new sale notice if the creditor or sheriff makes an oral announcement at the sale of the new sale date and that new sale date is within one hundred thirty (130) days of the postponed sale date. Under subsection (b), a sale may be postponed twice within the 130 day period without re-noticing.[4]

The second exception is by special order of the court. Thus, a party seeking more than two (2) postponements within 130 days of the original sale date or a postponement beyond the 130 day period, must file a motion in the state court. See Pa. R. Civ. P. 3129.3(a).

---

[4] Pa. R. Civ. P. 3129.3(b)(1) provides:

> If the sale is stayed, continued, postponed or adjourned to a date certain within one hundred thirty days of the scheduled sale, notice of which sale was given as provided by Rule 3129.2, and public announcement thereof, including the new date, is made to the bidders assembled at the time and place fixed for the sale, no new notice as provided by Rule 3129.2 shall be required, but there may be only two such stays, continuances, postponements or adjournments within the one hundred thirty day period without new notice.

The rule uses four (4) different terms to describe the deferral of a sheriff's sale: "stay," "continue," "postpone" and "adjourn."

In my experience, Pennsylvania attorneys, at least in this judicial district, tend to use the terms "continue" and "postpone" to refer to deferred sales for which no new notice is required and the term "stayed" or "canceled" for sales whose rescheduling will require re-noticing. I recognize that these linguistic distinctions have no foundation in Rule 3129.3.

**B.**

In Taylor, the creditor instituted foreclosure proceedings, obtained a default judgment against the debtor and, upon a writ of execution, scheduled the property for sheriff's sale. The debtor filed a chapter 11 bankruptcy petition a few days prior to the sale. The creditor "postponed" the sale by oral announcement at the scheduled sale pursuant to Pa. R. Civ. P. 3129.3(b). Shortly after continuing the sale, the creditor obtained relief from the stay. The postponed sale took place on the later sale date announced on the initial sale date.

The debtor filed an adversary complaint in the bankruptcy court alleging inter alia, that the creditor violated the automatic stay by postponing (rather than staying, or canceling) the sale. Finding no stay violation, the bankruptcy court dismissed the complaint. On appeal, the Third Circuit held that "the continuance of a sheriff's sale in accordance with state law procedure during the pendency of an automatic stay does not violate §362(a)(1)." Taylor, 178 F.3d at 701.

In reaching its decision, the Court reviewed the primary purposes of the automatic stay: "to effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [his] creditors." 178 F.3d at 702 (quoting Zeoli v. RIHT Mortg. Corp., 148 B.R. 698 (D.N.H. 1993)) (emphasis in original). The Taylor court observed that "continuation" under §362(a) means the "carrying forward" of a judicial proceeding. The court reasoned that the postponement at issue in Taylor did not allow the sale to go forward and that "no act had occurred that prejudiced [the debtor] or otherwise altered his position with respect to the property." Taylor, 178 F.3d at 702. The court concluded that the oral notice postponing the sheriff's sale merely preserved the status quo and avoided duplicative foreclosure costs that eventually would be charged to the debtor. Id. Therefore, the court

concluded that Rule 3129.3(b) comports with the underlying policy of §362(a)(1).

## C.

The Debtors acknowledge Taylor, but attempt to distinguish the precedent in two (2) ways. First, they assert that because no written motion was filed with the state court in Taylor, and therefore, no state court judicial intervention was required to effect the continuance, Taylor is not applicable. They also contend that the practice of filing multiple Rule 3129.3(b)(1) motions effectively alters the status quo because it subjects debtors to considerable additional expenses in the form of legal fees.

The Debtors seek support for their arguments in In re Townsville, 268 B.R. 95 (Bankr. E.D. Pa. 2001).

The issue in Townsville was confirmation of the debtor's chapter 13 plan. The debtor sought to provide for what it categorized as the secured claim of a "creditor," even though the putative "creditor" purchased the debtor's property at a sheriff's sale prior to the bankruptcy filing. That party objected to the plan's treatment of it as the "holder of a secured claim,"[5] contending that it was the owner of the subject property, not a creditor. In response, the debtor argued, inter alia, that the pre-petition sheriff's sale was flawed. Accordingly, once the sale was set aside, the debtor posited that the opposing party's status would revert from property owner to that of a secured creditor. Therefore, the debtor contended that she could provide for the creditor's secured claim in her chapter 13 plan.

---

[5]   See 11 U.S.C. §1325(b)(5) (setting forth standards for confirmation of plan that treats an allowed secured claim).

To determine whether the debtor's chapter 13 plan should be confirmed, the Townsville court considered whether the debtor was likely to succeed in setting aside the sheriff's sale, relief that the debtor requested in a pending adversary proceeding.[6]  In that adversary proceeding, the debtor contended, inter alia, that the sheriff's sale was void because the creditor violated the stay by publishing notices of the sale in a legal publication during the pendency of her a prior bankruptcy filing without having obtained relief from the automatic stay.

Ultimately, the Townsville court held that even if there had been a violation of the automatic stay, the debtor was not likely to prevail in establishing that the sheriff's sale could be set aside as void ab initio.  However, in dictum, the Townsville court made two (2) statements which warrant consideration here.

First, the court observed that Taylor was distinguishable because the creditor in Townsville took further action than the creditor in Taylor.  The Townsville creditor re-noticed the property for sheriff's sale, an action that the Townsville court perceived as moving the proceeding forward, not simply maintaining the status quo.  Here, the Debtors characterize the filing of multiple written motions in state court as the equivalent of re-noticing the property for sale.  They suggest that the filing of a written motion is even worse, in some sense, because it requires state court judicial action.

Second, the Townsville court observed the re-noticing of the sheriff's sale increased the judgment costs and, consequently, the claim against the debtor, causing the court to opine that

---

[6] Thus, strictly speaking, Townsville was not a final determination in the adversary proceeding of the debtor's right to set aside the sheriff's sale, but only a determination of the feasibility of the debtor's chapter 13 plan (i.e., whether the debtor's claims in the adversary case had a sufficient likelihood of success to warrant confirmation of the plan).

-10-

the debtor's stay violation claim "may be successful." Townsville, 268 B.R. at 125. The Debtors here argue that the multiple state court motions filed by Portnoff alter the status quo by imposing expenses on them in two (2) distinct ways: (1) increasing the amount of their Judgment on the Township's secured claim[7] and (2) compelling them to incur legal expenses to defend (or at least have counsel evaluate the potential for defending) the state court motion. The Debtors view both of these effects as altering the status quo sufficiently to implicate the automatic stay under 11 U.S.C. §362(a).

### D.

The Debtors' attempt to distinguish Taylor is unpersuasive.

Another judge in this district rejected the argument that the Taylor holding is limited to cases involving oral postponements of a sheriff's sale and the corollary argument that a postponement obtained by written motion violates the automatic stay. See In re Angulo, 2010 WL 1727999 (Bankr. E.D. Pa. Apr. 26, 2010) (per Fox, J.).

Angulo involved the same set of facts as the present adversary proceeding: the postponement of a sheriff's sale via state court motion without obtaining relief from the automatic stay in the bankruptcy court. The court dismissed the debtor's claim for violation the automatic stay, reasoning that the proper test under Taylor is whether the creditor's action altered

---

[7] In many cases, it is accurate to assume that re-noticing expenses of a sale or legal expenses incurred in connection therewith may be passed on to the debtor. This may be the result of either taxing such costs as part of the judgment enforcement process or due to fee-shifting provisions found in almost all residential mortgages. This adversary proceeding involves a municipality's enforcement of a statutory lien. The Debtors have not identified the precise source of authority (court rule or statute) for the additional legal fees they expect to incur as a result of the multiple continuance motions that Portnoff filed in the CP Court. Notwithstanding, I will accept the Debtors' assumption is correct for purposes of discussion.

the status quo. Angulo, 2010 WL 1727999, at *12 n.10.

Here, as in Angulo, Portnoff's actions in filing written motions simply maintained the status quo in the foreclosure action, just like the oral postponement in Taylor. Portnoff's client gained no substantive advantage over the Debtors by postponing the sale. A different result is not warranted simply because the state court procedural rules require the filing of a motion in some circumstances. I find Angulo persuasive and I will follow it.

The Debtors' second argument, that Portnoff's filing of multiple motions prejudices them because of the expected imposition of legal expenses, also fails under Taylor.

The potential for a creditor to incur legal expenses (potentially chargeable to the debtor) exists any time the creditor follows the state court rules that authorize the postponement of a sheriff's sale, regardless whether the procedure involves an oral announcement or the filing of a written motion. After all, the creditor's counsel likely incurs billable time in attending the sale or otherwise communicating with the sheriff to arrange for announcement of the sale postponement or in preparing and prosecuting a motion. The Taylor court was not concerned with this collateral issue, i.e., whether expenses chargeable to the debtor will be incurred in the process of complying with the state court rules. Instead, Taylor instructs that violation of the stay turns exclusively on the nature of the action taken by the creditor, and specifically, whether that action advanced the creditor's position in the state court proceeding.[8]

---

[8] I also note that it is hardly self-evident, as a systemic matter, that multiple postponements are detrimental to debtors. If a sale is canceled rather than postponed, requiring re-noticing of the rescheduled sale after the bankruptcy automatic stay terminates (either through the lifting of the stay or dismissal of the case, see 11 U.S.C. §362(c), (d)), subjects the debtor to re-noticing expenses. These expenses include potential attorney's fees for additional legal work and additional out of pocket expenses. The out of pocket expenses alone, can be substantial. (For example, in Philadelphia County, the sheriff's deposit which the creditor must pay to schedule a sheriff's sale is at least $2,000.00. This
(continued...)

The Debtors' argument that it is unfair to require a debtor to retain counsel to defend or contest such motions is equally unavailing. It is in the debtor's interest to have the sheriff's sale postponed. No real reason exists for the debtor to contest the postponement motion. Certainly, a debtor would prefer the sheriff's sale to be stayed or canceled, but it is very difficult to imagine the circumstances that would cause a debtor to contest a postponement motion. Indeed, the Debtors here make no allegation that they incurred any such legal expenses.

## V.  CONCLUSION

It may appear counterintuitive to hold that the automatic stay, 11 U.S.C. §362(a), permits a creditor to file a motion seeking some sort of judicial relief in a pending lawsuit against the debtor. Certainly, such action presumptively fall within the broad reach of the automatic stay. However, Taylor carves out a limited circumstance in which it is permissible – where the creditor seeks only to maintain the status quo with respect to an already scheduled execution sale and does not attempt, in any way, to advance its position in the pending litigation. Taylor holds that the postponement of a sheriff's sale is such a limited circumstance. That holding is binding on this court and applies to the facts set forth in the Debtors' adversary complaint. Portnoff's motions to continue the sale were acts to maintain the status quo and therefore, did not violate the stay.

---

[8](...continued)
includes the expected publication costs.). Only after several motions for postponement are filed in state court, will the re-noticing expenses tend to reach or exceed the level of legal expenses a creditor incurs in filing a (virtually always uncontested) motion to postpone a sale. Given these economic realities, it is difficult to make any generalizations regarding the relative effect on debtors of multiple postponements of sheriff's sales, as compared to cancellation and re-noticing of the sale.

Accordingly, the Debtors cannot obtain any of the relief they seek from Portnoff in this adversary proceeding.[9]  Further, there are no potential amendments to the Complaint that could render their claims under Count I or II viable.  Therefore, I will dismiss the Complaint without further leave to amend.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (court should grant the plaintiff leave to amend "unless an amendment would be inequitable or futile").

**Date: February 5, 2016**

**ERIC L. FRANK
CHIEF U.S. BANKRUPTCY**

---

[9]  Because the Debtors have failed to state a claim under Count I, it is unnecessary to address the class action under Count II.